The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Craig H. D. Armond presiding. Morning, Counsel. Morning. This is 4-18-0761, People of the State of Illinois v. Jermall Banta. Mr. McIntyre for the Appellant. Is that correct? Yes, Your Honor. And Mr. Sardinus for the Appellate. Yes, Your Honor. Alright. Mr. McIntyre. Thank you. May it please the Court, my name is Brian McIntyre and I'm with the Office of the State Appellate Defender and I represent Jermall Banta. I know it's misspelled in the captions. Go right ahead. Alright. Your Honor, what started as a routine traffic stop with Jermall as the passenger quickly turned into an unlawful seizure, an unlawful pat-down search, further unlawful detention for 20 to 25 minutes, a more invasive and unjustified search of Jermall's groin and buttocks, and eventually turned into Jermall being forced to the ground by four police officers and held there, while two more police officers pulled down his shorts and underwear at the side of the highway, with him in handcuffs and not resisting them, in order to retrieve a lump that they had felt deep between his buttocks. Jermall, with the motion to suppress evidence, had to make a prima facie case for suppression. He had to show that he was searched without a warrant, and he did. He said that after police had patted him down and found nothing, had searched the vehicle for what he said was about half an hour, what winds up being about 20 minutes, and still found nothing, they came back to him and said they needed to continue the search. He said, no, you already searched me once, did you find anything or nothing at all? Am I free to leave? But he was not free to leave, and officers would admit this. Instead, Trooper Chapman searched his groin, searched his buttocks, and deep between Jermall's buttocks, as Trooper Chapman put it, he finds a hard oblong object about the size of a golf ball. What Jermall says is that Trooper Chapman not only penetrated his rectum, but also slid his hand up and down like a credit card between Jermall's buttocks, based on no suspicion whatsoever. And so this shifts the burden of proof quite easily. Now the state must prove that some exception to the Fourth Amendment justified this intrusion, allowed a traffic encounter, a routine traffic stop, to turn into a strip search at the side of the road. People v. Ludeman lays out the three tiers of police encounters. It says, for a consent encounter, no suspicion at all is needed. But as we see in People v. Anthony, if the state were to rely on consent, it would need evidence of affirmative consent, and they never present any. Trooper Chapman says Jermall did not tell me no, which is sort of the opposite of affirmative consent. And as we see in People v. Anthony, what Jermall does in the video, by the way, the video is silenced during this portion, they're at the side of a busy highway, and police during the 20 to 25 minute search, where they found no evidence against Jermall, had silenced their audio recording. It's not back on yet by the time Trooper Chapman re-approaches Jermall. So the state presents absolutely no evidence of affirmative consent. The closest they even try to come is, he did not tell me no, and that's simply not enough. So the state did not show affirmative consent of any sort. Even if they had, that supposed implied consent would have followed unlawful detention and search, so it would be presumptively involuntary. So the court's finding that Jermall consented because he wasn't penetrated, and his consent retroactively validated his detention and search, it's against the manifest way to the evidence and the established law, it simply cannot stand. If the state were not going to rely on consent, it would have had to show that officers were justified when they began each act, when they began each part of the search, by what they knew. And the state didn't do that. Instead, Trooper Chapman said that he was suspicious, because the driver to Juan Stewart only knew Jermall by his nickname, or his street name. Now Chapman doesn't say what that is, and knowing him as Mel and not Jermall is in no way suspicious. Trooper Chapman said further, the driver said he was going to Bloomington to buy new shoes, but the driver did not have new shoes. Well, just because you go to buy shoes doesn't mean you have to actually purchase them. Jermall had new shoes, he said he had purchased a few days before, and Trooper Chapman could not understand why Juan Stewart would want new shoes, if Jermall recently bought new shoes, that's objectively unreasonable. And he says, Jermall said he was traveling to Chicago to see a sick aunt. Juan Stewart, by the way, appears to be Danielle Stewart's cousin or relative, Danielle Stewart is Jermall's wife. So Trooper Chapman believes that this is suspicious. Now, this is not a reasonable articulable suspicion of criminal behavior, he just won't let Jermall go, he will not let Jermall arrange a ride from the scene, or in any way try to get away or leave the scene, because he has no reason to detain Jermall. Instead, he does detain Jermall, and he has Jermall roll up the window of the car, and another officer walks a dog around the car and says something about an alert. The defense counsel objects and says, objection hearsay. And the state responds, Your Honor, it only goes to what the officer does next. Another way of saying that is, Your Honor, we are only admitting this to establish the officer's course of conduct, and because evidence admitted only for course of conduct cannot be used substantively, it's not hearsay. And the court accepts this explanation. Notably, the state never tries to present any evidence whatsoever to show that there was a trained drug detection animal on scene, or reliable alert, or any other basis to establish probable cause based on a dog sniff. The state is stopped, by the way, from arguing this on appeal, because it cannot imagine that there might have been evidence, which it did not present to meet its burden of proof. So there's no probable cause. There's still only an unreasonable suspicion. Trooper Chapman pats Jermall down. He does not even claim that he believes Jermall is armed and dangerous. This is the first clearly unlawful search by police. Well, didn't he ask to pat him down and Jermall acknowledged that he gave him consent to pat him down? Absolutely not, Your Honor. The closest that has come is Jermall says, I let him. Now he does not say I told him he could. Trooper Chapman never says he asked. And Trooper Chapman also never says that Jermall consented. Jermall just didn't fight him. Because Jermall is surrounded by six armed police officers at the side of the highway with no way to leave. So, following this... He said six, the video shows two initially. Your Honor, it is easiest to tell there are six when Jermall is being held down by four officers. By then, yes. By then, yeah. But we've jumped ahead now. Certainly, it's easiest to count them there at the end, but they all appear to be on the scene by the time he's patted down. So, following an unlawful pat down, police search the car for 20 minutes based only on an unreasonable suspicion that Jermall's story isn't adding up. As we see in Florida v. Royer, they cannot detain him based on that. They certainly can't search him again. So, after the illegal search, they keep him there, and they can't find any evidence that he's doing anything wrong. It's just that his story doesn't add up. And based on that, and the fact that Trooper Chapman cannot find any evidence to suggest wrongdoing, he comes back and says, I have to continue the search. He says, well, Jermall did not tell me no. Again, that's not affirmative consent. But also, he articulates no probable cause for arrest. And searching Jermall's groin and buttocks would require probable cause for arrest. That simply cannot be done even on reasonable suspicion, even if it existed. And so, at every stage, police pushed past what they were allowed to do, based on nothing more than an incoherent hunch. And the trial court's denial of the motion to suppress was therefore against the manifest weight of the evidence. The state never presented any evidence of affirmative consent, period, or any way to show that such consent could be voluntarily given after an unlawful detention and search. They never presented any evidence of a reasonable suspicion that Jermall was engaged in criminal activity in order to detain him. They never presented any evidence that he was armed and dangerous in order to allow his pat down, which was separately needed. They never presented any evidence to establish probable cause. Therefore, the burden could never shift back to Jermall. At a motion to suppress, the ultimate burden is on the movement. The burden could never shift back to Jermall. The trial court's ruling was against the manifest weight of the evidence, and this court should reverse the conviction, because that was the only evidence against Jermall. Now, moving on to the second argument. If the court had somehow had some evidence, which it did not, that there was either probable cause to search between Jermall's buttocks, or that Jermall gave affirmative voluntary consent to the search, first of all, the transcripts are clear, so there's nothing in the testimony to establish any of that. The only possible way the court could reach that is by finding something in the video. As I mentioned, the video is literally silent on this issue, because at the side of a busy highway, and for the same reason they're not supposed to perform a strip search there, it's loud, it's noisy, there's traffic, so they turned off their audio recording, or at least that's the presumption. But what that means is that the state's evidence does not prove affirmative consent, and if the court somehow found that it did, which it does, it says, oh, he consented because he wasn't penetrated, so his preceding detention is somehow justified. That's against the law. But even if it found that, Jermall had the ultimate burden, and it's more than a prima facie case. He never got to see what the court saw in that video. More importantly, he didn't get to see where the court viewed it, whether the court knew that there was supposed to be audio for some parts, what the court saw and heard. In fact, in this case, the DVD was lost and we had to supplement the record, because it appears to have been lost in the judge's home DVD player. We had to use the state's copy because defense counsel's copy was lost to the judge. And so, Jermall never gets to see what the judge is supposedly relying on to shift the burden back to him. There's no evidence to do that. But if there had been, he would have a right to rebut that evidence, and he was denied that opportunity. He was denied the opportunity even to see what the judge could see, to hear what the judge could hear. And again, the video is silent on consent, literally. And so, I understand the court cannot reach this second issue, unless it is unable to grant relief based on the first issue, under the principle of constitutional avoidance. This is determining the limits of a constitutional right. And in Young, the court said, well, that constitutional right doesn't necessarily extend to a state's motion to admit the hearsay statements of a child victim, but that's entirely different. The state would have the ultimate burden, and as the court ruled in Young, there, the defendant would have no knowledge of the contents of the video. He would have no ability to say, wait, there should be sound here, or wait, as you see me waving my arms, when Trooper Chapman re-approached me, and then placing them behind my head in the position of an arrestee, I never said yes. I said, no. You already searched me once. Did you find anything or nothing at all? Am I free to leave? And you can see this in the video that now Trooper Chapman has laid the foundation for, that now has been admitted in Jermel's rebuttal case, but he was denied a rebuttal case. And he was never afforded the opportunity. It's his personal right to be present, you see. But his attorney just says, judge, view it when you want. And the judge never even found that the burden shifted back to Jermel. It never even told him, oh, by the way, you'll need to present additional evidence. It just said, well, you weren't penetrated, and at some point I think you consented, so this must all be okay. And so if the court is unable to grant relief on the clear legal issue of the motion to suppress, where there was no evidence to warrant the denial of the motion, then it can reach the constitutional question of whether Jermel's right to be present extends to his right to rebut the state's purported evidence that he consented to an invasive and unconstitutional and humiliating search, which ended a strip search inside of the road, where he's being pinned down by four officers and disrobed by two more as he shouts that he cannot breathe. Mr. McIntyre, may I interrupt you for a moment? A question. What if we agree with you on the consent issue and find lack of consent? What should happen? Your Honor, at that point, the burden could never have shifted back to Jermel. He never would have had anything to rebut. Because there was absolutely no evidence of consent, the state failed to present any such evidence, the motion had to be granted. And once again, because this is based on clearly established law and does not reach the constitutional question of determining the limits of the constitutional right to be present, constitutional avoidance would require the court to address that first. And then ultimately, with what resolution? Oh, I apologize, Your Honor, because the only evidence against Jermel was subject to suppression. As we see in argument three, the only evidence the state presents is one lump, as they say, an oblong lump about the size of a golf ball that Shupert Chapman thought might be drugs after he probed between Jermel's buttocks. I'll rely on my brief for why that's not okay either. But that's the only evidence against him at all. Police could never get there if they had not illegally frisked him, illegally detained him, and then illegally searched between his buttocks. Therefore, it is the fruit of the poisonous tree for several reasons. And he must be acquitted. His conviction must be reversed. There's no evidence against him if suppression is granted. Thank you. Thank you. Do we have any further questions? I see none. Thank you, Mr. McIntyre. You'll have an opportunity in rebuttal. I'm sorry. I thought you were done. I apologize. I just wanted to be sure before I wrapped up. I will rely on my brief for the remaining two arguments. Based on that, I would ask the court to reverse Jermel's conviction outright. If not, that it grant him a new motion to suppress where his opportunity to be present, his right to be present is observed. And again, I will rely on my brief for the remaining arguments. Thank you, Your Honor. Thank you, Mr. McIntyre. Mr. Sardinis, before we get started, your brief excluding your cover page, table of contents, and points of authorities exceeded 60 pages. And I was wondering, I never saw anything in the record where you sought leave to file a brief in excess of the page limits. Was that ever done? Good morning, Your Honors. May it please the court. I apologize because my recollection of the rule regarding the length of briefs is that it is either the 60 page. It is it is if the brief is under a certain number of words that it could be admitted without a motion to to exceed the page limit request under the rule. If that's my misinterpretation of the rule, I apologize. That was my understanding of how the rule regarding briefs filed before the court under I believe it's 341 operates. If that is my misstatement, I apologize for not asking for leave. I would have absolutely done so. That was my impression of the rule. Am I right about that? I do apologize if that is the case, that the page limit is the one that is up to. That was the way it was explained to me. All right. Go ahead. Okay. Thank you, Your Honors. With apologies again for the page limit issue, if that is the case. I would like to open this discussion of the search itself by starting from the premise of the Fourth Amendment, which is that the Fourth Amendment protects a citizen from an unreasonable search or seizure. And as this court, the Illinois Supreme Court and the US Supreme Court have repeatedly reiterated over time, reasonableness is the touchstone of the Fourth Amendment. What is reasonable in light of what is known to the police at the time that they decide to see someone, decide to search someone? Does it comport with what the courts have said is reasonable under circumstances? And as the Fourth Amendment has been fleshed out throughout the entirety of the history of the Constitution, we've seen numerous cases that have defined and contoured that right in various circumstances as they have presented themselves over time. What we had here was a search where at each phase of the police's detention and then subsequent search, they made reasonable decisions about how to go about dealing with a fluid situation. They stopped the vehicle for speeding. Both the driver and the passenger were unable to legally drive the vehicle. They both had suspended licenses. We have a situation where during the process of finding out that these two people cannot drive the car and are now on the side of the road, unable to legally operate the vehicle, they, within the reasonable search of the reasonable course of the stop, find out that there's an alert on a dog that for four drugs on either the occupant or the occupants of the vehicle or in the vehicle itself. And I'll start by rebutting one of the defendant's points at the beginning, which is regarding the hearsay issue in the dog. It's a clear principle that at a suppression hearing, a court can rely upon hearsay for the substantive purpose of – for a substantive purpose when evaluating whether or not evidence should be admitted in court. That is clear black-letter law, and it has been in Illinois. That's true, but that's not the purpose for which it was introduced, was it? No, Your Honor. And if I were the state's attorney and if I were training this particular state's attorney, I would have said you don't have to say that it was for the purpose – for the course of what the officer did. You can rely on it substantively for the idea that a dog actually alerted or that – or rather that Trooper Kink told him that the dog alerted and that that statement was true, that Trooper Kink did say that. And obviously, I understand that you cannot rely on this later justification for this, but defendant ended up stipulating to the fact that we would have called the officer at trial, and he would have said specifically that the dog had alerted and that we would have laid the foundation for that. So there was no question in anyone's mind that the trial court acted irrationally by – if it did – if it should have relied and did rely upon the fact that the dog did alert because defendant ended up later stipulating to it. And there's no reason why the court would have any skepticism. They're stipulating to what would be introduced at trial, but we've got to first deal with what was happening during the motion to suppress. Absolutely, Your Honor. For purposes of the motion to suppress, the prosecutor, for whatever reason, instead of just saying it's probable cause, he says, well, Judge, we're only admitting it to show the foundation for the officer's subsequent actions. So he's not even offering it for the purpose for which it would normally be considered. Yes, Your Honor, but a couple of things. One, of course, this court can't affirm under any rationale that's been the basis for the record. But additionally, the trial court is presumed to know the law and apply it correctly. So if the essay had said something completely incorrect about the hearsay reasoning, like it was an excited utterance, which would not be a correct statement of the hearsay exception that applied in this case or if there was a hearsay exception. And the court had said, OK, and then later considered the motion and realized, oh, this could just be admitted substantively. There is no reason to reverse the prior court's judgment because an essay made an incorrect statement of law that later turned out to be, in this case, overly restrictive on what the court's use of the evidence could be, simply because the essay made a mistake in defining the contours of what the court could consider in that particular sentence. And I think that it's quite obvious the court could rely on that substantively. And defendant offers no rebuttal that they couldn't rely upon it substantively for the truth of the truth. Well, what could or couldn't happen might be an interesting theoretical concept. But the question is, is there any evidence that the court considered this for its normal probable cause purpose other than foundation? I think the premise of that question assumes that the court misunderstood, which is not what this court and the only Supreme Court have specifically repeatedly said, which is that courts are assumed to apply the law correctly. And if the court at the time accepted that explanation and then upon reviewing the evidence and the and the legal doctrines and thinking through it like a judge does after the hearings said, well, I can just rely upon this substantively. That's a correct statement of law. And defendant has no rebuttal to the argument that it's not. Is that a record? No, but it's not. But again, this goes to burden shifting. It is on the defendant to show that the trial court relied on the law incorrectly or made a misstatement of law or misunderstood the law. Here we're saying that an essay made a misstatement about how much the court could rely upon the substantive nature of a statement. And then that somehow makes it so that the trial court states like a prima facie case that the trial court relied upon it incorrectly or illegally. That's not – that beggars belief in terms of my understanding of how trial courts are presumed to know the law. The court didn't address it at all and really focuses solely on consent, doesn't it? Yes, Your Honor. It does focus on consent. But again, if the record is silent, we assume absent other evidence that the trial court correctly used the law and applied it in the case. And again, defendant offers no argument as to whether or not the court did consider it, if there's any evidence one way or the other as to that. And in this circumstance, we presume that the trial court correctly evaluated the evidence. And again, I'm kind of shocked that the argument would have to rely upon the argument that an essay making a misstatement of what – an overly restrictive misstatement. Well, he doesn't make a misstatement. He offers evidence for a limited purpose. Now, the reason it's relevant is because what you're going to do is, in a minute, you're going to bootstrap the probable cause onto the subsequent actions of the police officers. And the problem is there's nothing in the record to indicate that the judge considered the canine sniff as probable cause of anything. The judge decided the case based on the consent issue. I would be worried on judicial economy grounds alone for this court if it were to say that because the record is silent about whether or not the trial court ended up making a decision based on a different understanding of law than what an essay offered, that that is evidence that the court made a misstatement of law. And therefore, a manifest weight argument has to be thrown aside, and a de novo argument somehow applies because there's a legal error because the court didn't sufficiently explain or may have used the correct statement of law. And therefore, there's a reversible error. I think that would present numerous cases that this court would find ridiculous in a number of different circumstances. I know in this one it obviously makes much more sense because the essay mistook and limited or incorrectly stated that he was offering it for a limited purpose when he could have just offered it for the substantive purpose, which is that it established that the trooper did that. And especially in this case where there's a record that they would have called the officer at some point in the trial. I know – I understand, Your Honor, because you did bring up that that is obviously after the suppression hearing. It can't be used retroactively. But if we're evaluating whether or not it was reasonable for the trial court to take that statement for a substantive purpose, then the fact that it was later stipulated that we could have called someone who would have laid out the foundation speaks to at least the reasonableness of understanding that statement for the truth of the matter asserted as being reliable on some level. All right, well, let's see how you get where you're going to get without bootstrapping it on the probable cause. Your Honor, truthfully, I don't think there is a way that I could do that without – I think that the statement itself has to establish that the drugs – that the dog alerted and that the drugs in the car were alerted at that point in order for the search to make sense. There's no – I will concede that as an element. But there's no other way that we can establish that they have cause to hold them because that changes the nature of the stop. And I'm fine saying that because, as you see in my brief, I lay out from step A to Z how the suspicion matured, how the stop could then be extended beyond the purpose of the stop. And I guess the only other logical way I could make that argument is that somehow he couldn't drive the vehicle because he had a suspended license, but obviously that wouldn't give them cause to then search the vehicle and him later or request to search him later. I guess that would be – I'm sorry. I'm now speaking through this out loud, so it's kind of difficult. I wasn't assuming that this was going to be such a big sticking point considering the nature of the law on this. But I think that it is important that they establish that they have cause to search the vehicle and him with the fact that the dog's testimony can be used. And again, I reiterate, Your Honors, shifting the burden onto the state to disprove a misunderstanding is… And the record says they offered it for a limited purpose. There's nothing in the record to indicate that the court was asked to consider it for purposes of probable cause, nor is there any indication that the court actually considered it for probable cause. Right, Your Honor, but there's no response to the argument, at least from the defense because he hasn't made this argument, that it couldn't be relied upon for that purpose. So if the trial court, upon sitting and reviewing the evidence, did that, then the search, as we'll get to, was entirely reasonable from A to Z at that point. At each step of the process, the officers got an alert, which then they relied upon to give them suspicion to search the vehicle. We also argue it gives them cause to search the defendant in this case, which obviously is something that this court has disagreed with in previous cases. But we think that this court should reconsider and has been open to reconsidering that particular approach that was stated in FONDIA. But, again, I just think that the argument that the trial court – because the state offers something for a limited purpose, that the court can't then rely upon it for its proper purpose, which it obviously can based on the law, and the defendant can't offer an argument that says that that's not the case, that that's somehow improper for a reviewing court to take into consideration and to view on appeal. If there's no further questions on that, I can move on to the rest of the search from the point in which they take the defendant out of the vehicle and search the vehicle and search him. So at the point in which the dog alerts that there are drugs in the car, as the state has argued, they had probable cause to search both the vehicle and the defendant himself. And I can discuss the issue of the FONDIA case and how the Nuremberg decision points out the flaws in that case and how it creates additional requirements on canine units that aren't present when a police officer detects an odor, how it shifts the burden to the state to prove that investigative technique is somehow proper when, in reality, it's the defendant's burden for a motion to suppress. All of those issues have been recognized by this court in a subsequent decision, I believe, is the Boyd case, which discussed the 2nd District's holding in Nuremberg. But the – and this court seems to be willing to revisit that particular line of precedent in that it discussed that decision in great detail and then decided that it didn't have to revisit its decision because of different grounds that didn't apply in the FONDIA decision. But our argument is that that would have established probable cause by itself, and we don't have to get into the consent issue. But if we get into the consent issue, I mean, the situation that occurred is that defendant – and this, again, goes to the misstatements the defendant makes about the state's argument – defendant can consent silently. That has been established by the Supreme Court and the Illinois Supreme Court. And while the Illinois Supreme Court has said that there is a dearth of cases explaining how – when and where silence leads to – or establishes consent or not, I think that this case is quite instructive because in the accounting of the officers here, defendant doesn't say anything when asked if he can be searched. And then while he's being searched, says, oh, no, I'm fine being searched, but could you switch officers? And the state – sorry, the police oblige him and switch officers. And at this point, I've already found what they believe to be drugs in the defendant's buttocks and, again, confirmed with a second officer that there were drugs in his – between his buttocks and at this point had probable cause to retrieve the drugs from his body. And, again, defendant's argument relies on – about this whole series of events relies on misstating that somehow defendant's previous statement retroactively renders his silence fine in the sense that somehow being silent is not consent, and therefore his next statement reverts what was not consent into consent. The state's argument isn't that. The state's argument, based on Supreme Court precedent, is that silence can be consent and that all we were using by the statement in the middle of the search is to prove that his silence previously was consent. And I think if we take this entire search in a holistic view about what the police and the defendant were doing in the situation and how the search occurred, we see that the police behaved reasonably at every stage. They stopped the vehicle. – May I interrupt you for a moment? – Yes, of course, Your Honor. – I noticed in your brief you didn't address people v. Anthony, the Supreme Court decision, and people v. Wrabley, the 4th District decision that was cited to by the defendant, and he spent a fair amount of time discussing those cases. Why not? – Well, Your Honor, I felt that those cases were not instructive, and I think I offered a case that I thought was more on point that the 4th District gave. I can cite to it really quick in my brief. I apologize, Your Honor. I'm enough within two pages. Well, I discussed his reliance on Lucas, but – oh, yeah, I discussed this court's ruling in Pettis as a more instructive case. If the court feels that I didn't adequately address those two cases, I apologize, but the issue with Fourth Amendment cases, I feel, is that because the factual circumstances are so specific to each one, it was, I guess, from my perspective, more instructive to take a case that I thought was more closely balanced to this one based on the facts and, I guess, allow the court to make its decision as to whether or not it believed that the case was closer to the one that I cited versus the one that the defendant cited. But if the court has specific questions about those cases, I guess I can address them. Well, it deals with the clarity or the lack of ambiguity in terms of defendants' consent to search, and Anthony and Rapley make clear that it has to be very clear that consent has been given. So with that being the premise here, how would you address the facts here relative to that proposition? Well, what I would say is that here we have a defendant who does not say anything in response to a request to search and who then, in the middle of the search, declares that he was fine with the search and that he just wanted a different officer. What did he say that you interpret as his communicating he was fine with the search? Okay, so my recollection of the video itself was that he said something to the effect of that he—I'm sorry, I'm not going through my notes—that he said that he was cool with the search is what my recollection was, but that he just wanted a different officer because this person was being a little too handsy, I think was the word he used, or something to that effect. So that he was fine with the search was effectively what his statement was. And to me, I think that's a clear-cut indication that he's declaring that he had been cool from the search in the beginning and that his silence, therefore, weighs towards affirmatively establishing that he was okay with the search and that he consented to the search. And I think that these cases are difficult, as the Supreme Court has outlined itself, because, again, we're relying on a lack of a statement to establish affirmatively that someone agreed to a search. And that is obviously murky territory, and in terms of—I shouldn't say murky territory. It is difficult territory for trial courts and for reviewing courts especially to evaluate on records because they're obviously not encountering the witnesses, at least for a reviewing court in person. And the statements that I saw on the video – I mean, I don't – I guess I strained to figure out what else he would have to say at that statement to establish that he did consent to the search. And that when a defendant says that he's consenting to the search, when he says that he's okay with the search, he's cool with the search, whatever vernacular he uses, that that is enough to establish in a reasonable officer's mind at the facts in front of him that the defendant consented to the search. I think that that is a perfectly fine rule to establish, or at least in this particular set of circumstances, to find that that is applicable. Your Honors, I see my time has expired. Are there any more questions? Thank you, Mr. Sardinus. Mr. McIntyre. Your mute is on. Thank you, Your Honor. I do want to respond to a couple of things. The state says that we've presented no argument at all about this dog sniff. The problem is that at a motion to suppress, if the state wants to establish probable cause for a search – again, state's burden of proof – they have to present evidence of a trained, reliable drug detection animal, not another officer told me about an alert. When an arresting or seizing officer relies on information provided by the instigating officer, someone else, the question is not the good faith of the acting officer, it is the information possessed by the instigating officer. I think the case is Henderson, dealing with a police flyer or bulletin between two agencies. And the issue there is that all they say is, oh, somebody said something about a dog alert. Even if that were to be taken as true, even if it could be used for the truth of the matter asserted – by the way, the state precludes any cross-examination on this issue, any further evidence on this issue, because they ask the court to consider it only for a limited purpose. So now, there can be no vetting of whether that was a trained animal, whether this was a real alert. Even so, the state cites to Pettis and Fondas in response to the consent issue. That's not about consent. That's about a dog search. And those cases say that when the dog handler gets up and testifies to his training and testifies to why the alert was valid and why it was reliable, then and only then can the court rely on it. And even so, an alert to a car without some testimony from the officer that his training will not allow him to search individuals is not enough to search an individual. So even on that authority, even if somehow somebody told me about an alert could be substantive evidence that an alert happened, it's still insufficient to establish probable cause for purposes of a motion to suppress. Now, whether evidence of the alert or of the dog should come in, whether evidence other than that should come in, yes, okay, maybe. Maybe the court could have said, oh, well, Kink said a dog alerted. So if Kink comes in and shows that that was a reliable alert, maybe there's probable cause. But the state went the other way and precluded any cross-examination on this issue, didn't even present Trooper Kink. So that is not a basis for suppression. Did the court reference the dog sniff and probable cause? No, Your Honor, they accepted the state's invitation not to rely on it. In fact, the court's only statement of law, well, they made two statements of law. One was correct and one was obviously false. The first was the initial stop was valid because the guy was speeding, and that's true. But then the court says that the detention and search were valid because he consented. Well, since there was no evidence of affirmative consent, as Anthony says, is necessary, all there is is Jermel Banta arguing with the officer with his hands for a moment, although he can't hear what he's saying, and then putting his hands behind his head in the position of an arrestee. That's effectively, as Anthony says, do what you have to do. And when he says, I'm cool if you stop searching between my buttocks, if you stop rubbing me and making me feel uncomfortable, this officer's too rough. I'm not going to fight you if somebody else takes over and treats me like a human being. But they don't do that. The next officer takes over and goes right between Jermel's buttocks. And the idea that consent can be established based on nothing, nothing at all, no testimony. His comment was, I'm cool if. I'm cool if another officer takes over. Yes, which means I will not fight you. It could reasonably be construed as I will not fight you. And as we see in People v. Anthony, if there are two reasonable constructions, one being do what you have to do and one being maybe you could call that consent, then it's not consent. But even so, that happens after the search begins. That happens well after he's been illegally detained in Frisk and anything that happens after an illegal act by police is presumptively involuntary. The state presented no evidence to show that it could have been voluntary, rather than him being surrounded by six police officers who would soon strip search him in public after threatening to tase him and take away what little dignity he has left. Because those statements are also in the video. And officers who say that don't think the guy's consenting. By the way, even if they had some justification to feel between his buttocks in the first place and to feel a lump there that they thought might be drugs, Raibley says that unless the incriminating character is immediately apparent, unless it's unmistakably contraband, they cannot further manipulate or seize that item. Therefore, when they said, I thought the lump might be drugs, it could be many things, most of them embarrassing because of where they're searching. But the officer does not... That's probably not your strongest argument. Well, but what the officer does not say, and again, it's the state's burden of proof, is this was unmistakably contraband. It should never get that far. At no point were the officer's actions with respect to Jermel justified. He was never allowed to try to leave the scene, to arrange a ride away, anything. He was never even allowed to stay silent and not have that taken as, yes, you can search between my buttocks. It's absolutely ridiculous. The court's ruling was against the manifest way to the evidence in the established law, and this court should reverse. Thank you. Thank you, Mr. McIntyre. Thank you, counsel. The court will take this matter under advisement. We stand in recess.